Keith E. Harris Esq. (KH 3162)
The Office of Milton H. Pacther Esq.
225 Park Avenue South
New York, NY 10003
(212) 435-3437
(212) 435-3569 (fax)
Attorney for Plaintiffs:
The Port Authority of New York and New Jersey;
WTC Retail LLC and;
The Port Authority Trans-Hudson Corporation

'08 CIV 3701

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
..................................................................X

In re SEPTEMBER 11, 2001 LITIGATION

.................................................................. X

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY, WTC RETAIL LLC AND THE PORT
AUTHORITY TRANS-HUDSON CORPORATION,

    Plaintiffs,

        v.

UAL CORPORATION, UNITED AIRLINES, AMERICAN
AIRLINES, INC., AMR CORPORATION,
MASSACHUSETTS PORT AUTHORITY, DELTA
AIRLINES, INC.,THE BOEING COMPANY, MIDWAY
AIRLINES CORPORATION HUNTLEIGH USA
CORPORATION, ICTS INTERNATIONAL, N.V., GLOBE
AVIATION SERVICES CORPORATION, BURNS
INTERNATIONAL SECURITY SERVICES
CORPORATION, BURNS INTERNATIONAL SERVICES
CORPORATION, PINKERTON'S INC., AND SECURITAS
AB,

    Defendants.
..................................................................X

**COMPLAINT**

**CIVIL ACTION No.**

**(AKH)**

**JURY TRIAL
DEMANDED**

RECEIVED
APR 17 2008
U.S.D.C. S.D.N.Y.
CASHIERS

    The Plaintiffs The Port Authority of New York and New Jersey (the "Port Authority"), WTC Retail LLC ("WTCR") and The Port Authority Trans-Hudson

Corporation ("PATH") (hereinafter collectively referred to as "The Port Authority"), by its attorney Milton H. Pacther, for its Complaint, pursuant to an Order of the Honorable Judge Alvin K. Hellerstein, dated March 18, 2008, granting leave to the Port Authority of New York and New Jersey, WTC Retail LLC and the Port Authority Trans-Hudson Corporation to amend their Cross Claims in 21 MC 97 and to recast them as direct complaints against the Defendants in 21 MC 101, respectfully sets forth the following, upon information and belief:

## THE PARTIES

### PLAINTIFFS

1. The Port Authority is a body corporate and politic, created by compact between the States of New York and New Jersey with the consent of the Congress of the United States, and has its principal place of business at 225 Park Avenue South, New York, New York 10003.

2. WTC Retail LLC, a Delaware Limited Liability Company, in which the Port Authority of New York and New Jersey owns 100% of the membership interests, with a principal place of business at 225 Park Avenue South, New York, New York, 10003.

3. The Port Authority Trans Hudson Corporation is a wholly owned subsidiary of the Port Authority and owns, operates, maintains and controls an inter-urban electric railroad between the States of New York and New Jersey.

4. The Port Authority owned, operated, maintained and controlled those portions of the World Trade Center Complex including and not limited to the World Trade Center PATH Station and the Retail Mall which were not operated, maintained and controlled by others pursuant to a lease, license or other agreement.

## DEFENDANTS

5. AMR Corporation ("AMR") and American Airlines, Inc. ("American") at all times relevant hereto were and are corporations organized and existing under the laws of the state of Delaware and maintain their principal place of business in Texas. AMR is the parent corporation of, and exercised control over, its wholly-owned subsidiary, American.

6. Defendants UAL Corporation ("UAL") and United Airlines, Inc. ("United") at all times relevant hereto were and are corporations organized and existing under the laws of the state of Delaware and maintain their principal place of business in Illinois. UAL is the parent of its wholly-owned subsidiary United.

7. Massachusetts Port Authority ("Massport") is a public instrumentality created and existing under the laws of Massachusetts, with its principal place of business in Massachusetts. Massport owns, operates, maintains and controls Logan International Airport ("Logan"), including the operation and control of Logan's security operations. Massport also controls, supervises and directs the security activities of those persons and entities who use, lease, or otherwise operate businesses at Logan. As such, Massport, on and before September 11, 2001, was jointly, severally and contractually liable, by and through its agents, employees, lessees, and contractors for all security breaches at Logan, including security breaches anywhere at Logan and aboard aircraft that departed from Logan.

8. The Boeing Company ("Boeing") is a corporation organized and existing under the laws of Delaware, with its world headquarters in the state of Illinois, and major business operations in the states of Washington, California, Missouri and Kansas.

9. Delta Air Lines, Inc. ("Delta") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Georgia.

10. Midway Airlines Corporation ("Midway") is a corporation organized and existing under the laws of Delaware, with its principal place of business in North Carolina.

11. Huntleigh USA Corporation ("Huntleigh") at all times relevant hereto was and is a corporation organized and existing under the laws of the state of Missouri and maintains its principal place of business in Missouri.

12. CTS International, N.V. ("ICTS") at all times relevant hereto was and is a business entity organized and existing under the laws of the Netherlands and maintains its principal place of business in the Netherlands. ICTS is the parent corporation of and exercised control over, its wholly-owned subsidiary; Huntleigh.

13. Globe Aviation Services Corporation ("Globe") and Burns International Security Services Corporation ("Burns") at all times relevant hereto were and are corporations organized and existing under the laws of Delaware and maintain their principal place of business in Irving, Texas. Burns is the parent corporation of, and exercised control over: its wholly owned subsidiary, Globe.

14. Pinkerton's Inc. ("Pinkerton's") at all times relevant hereto was and is a corporation organized and existing under the laws of Delaware and maintains its principal place of business in Illinois. Pinkerton's is the parent corporation of, and exercised control over, its subsidiaries, Globe and Burns.

15. Securitas *AB* ("Securitas") at all times relevant hereto was and is a business entity organized and existing under the laws of Sweden and maintains its principal place of

business in Sweden. Securitas is the parent corporation of, and exercises control over, its subsidiaries, Globe, Burns and Pinkerton's.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 49 U.S.C. 40101 § 408(b), which provides that the United States District Court for the Southern District of New York shall have original and exclusive jurisdiction over all actions brought for any claim, including property damage, "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."

17. Venue is proper in this Court pursuant to 49 U.S.C. 40101 § 408(b).

## CLAIM ONE FOR NEGLIGENCE
## AGAINST ALL DEFENDANTS
## EXCEPT BOEING

18. Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

19. On and prior to September 11th all defendants except Boeing, through their agents, servants, officers, employees, designees and/or contractors, jointly and severally, undertook and did develop, implement, own, operate, manage, supervise, staff, equip, maintain, control and/or oversee the airline and airport security systems at the Portland (Maine) International Jetport ("Portland Jetport") and/or Logan (including, but not limited to, passenger screening, security checkpoint operations, pre-boarding passenger and luggage inspections, controlling access to secure areas, ticket purchasing and check-in procedures and passenger identification and document checks for aircrafts and flights), to ensure the safety and security of air passengers and of persons and property on the ground from harm as a result of criminal acts, violence, hijackings, crashes and all

hazards that could cause harm to air passengers and persons and property on the ground. As such, they owed the plaintiffs a duty to establish, operate, and maintain such security systems in a non-negligent, non-reckless, non-wanton and non-tortious manner.

20. On and prior to September 11th, the United States Department of Transportation, through the Federal Aviation Administration, issued certifications authorizing the defendants to perform services in the commercial aviation industry that transports passengers for hire. Pursuant to this certification, all defendants had a duty to comply with all federal statutes, rules, regulations, security and operational directives. Each had a duty to use a high, if not the highest degree, of care when providing airport and airline security to protect both passengers and the general public (including the plaintiffs herein) from harm as a result of criminal acts, violence, hijackings, crashes and all hazards that could cause harm to air passengers and persons and property on the ground.

21. United was, on and prior to September 11th, a common carrier engaged in the business of transporting passengers by air and was operating regularly scheduled flights from Portland Jetport and Logan. United operated the flight designated as Flight 175 ("Flight 175"), which departed from Logan Airport. On September 11th, five individuals posing as passengers, carrying prohibited items, including weapons, successfully evaded all security measures, hijacked Flight 175, took over operation of the plane and thereafter intentionally crashed the plane into Two World Trade Center. The crash destroyed that building along with the nearby Four World Trade Center building, and caused personal injury, death and destruction of property and economic losses and damages.

22. On and before September 11th, 2001, all defendants except Boeing were engaged in the business of, and separately and collectively assumed responsibility for,

implementing, developing, owning, operating, managing, maintaining and supervising the airline and airport security systems at Portland Jetport and/or Logan.

23. On September 11th, five hijackers posing as passengers penetrated the airline and airport security systems, including the pre-screening and screening systems at Logan that were designed to prevent or deter individuals that pose a hazard to aircraft security and to prevent or deter weapons from being taken onto aircraft. The hijackers, nevertheless, were able to board Flight 175 carrying dangerous and deadly weapons. These hijackers entered the unprotected cockpit of Flight 175 and took control of the aircraft. While under the control of the hijackers, the aircraft was operated in a careless, reckless, extreme, and dangerous manner. No system was in place that would have prevented the hijackers from operating the aircraft or which would automatically notify the defendants or the government that the authorized pilots were no longer in control of the aircraft. The hijackers were unimpeded in their criminal act of crashing Flight 175 into Two World Trade Center, which caused the death of over a thousand people and billions of dollars of economic loss as a result of the collapse and destruction of that building and the nearby building Four World Trade Center.

24. Each defendant owed a duty to the plaintiffs to take reasonably effective countermeasures to prevent or deter persons from bringing weapons aboard an aircraft and from entering into the cockpit and taking over the flight controls of a commercial aircraft and/or to prevent or deter persons who may pose a hazard to persons and property in the aircraft and on the ground from boarding the flight. Each defendant also owed a duty to the plaintiffs to have a system in place that would automatically notify them and the government whenever unauthorized persons were flying the aircraft.

25. All defendants negligently and recklessly breached the duties, jointly and severally, that each owed to the plaintiffs. These defendants were negligent and reckless, *inter alia*, in failing to screen passengers to protect against weapons and/or potential weapons from being brought onto an aircraft, in failing to protect against unlawful entry by hijackers into the cockpit of Flight 175; in failing to prevent individuals who potentially pose a threat to the aircraft and persons and property on the ground from boarding the aircraft; in failing to protect against hijackers flying the plane after they had gained entry; and in failing to install an automatic notification system to signal when authorized pilots were no longer operating the aircraft. These breaches of duty proximately caused on September 11th the destruction of Two World Trade Center and Four World Trade Center.

26. As a consequence, the plaintiffs have sustained damages, including those for property damage and business interruption.

### CLAIM TWO FOR NEGLIGENCE AGAINST ALL DEFENDANTS EXCEPT BOEING AND THE SECURITY COMPANY DEFENDANTS

27. Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

28. Except Huntleigh, ICS, Globe, Burns, Pinkerton and Securitas (the "Security Company Defendants") and Boeing, all defendants had, on and before September 11th, a nondelegable duty to the traveling public and to the plaintiffs to exercise reasonable care in the selection of competent and reasonably careful security system contractors to perform security duties.

29. These defendants breached this nondelegable duty when they negligently and recklessly employed persons and entities such as the Security Company defendants to operate as security system contractors at Portland Jetport and/or at Logan.

30. The security contractors employed had a well-documented record of incompetent and careless operation and maintenance of their contractual security service operations over many years, according to the FAA "Red Team" audits and other independent checks on the effectiveness of their security systems.

31. The failure of these defendants to exercise reasonable care to select competent and careful security system contractors was a proximate cause of the hijacking and crash of Flight 175 on September 11th, and of the destruction of Two World Trade Center and Four World Trade Center.

32. As a consequence, the plaintiffs have damages, including those for property damage and business interruption. Therefore, these defendants are jointly and severally liable for all damages sustained by the plaintiffs. The plaintiffs are entitled to recover their damages from them to the full extent allowed under applicable federal and state law.

### CLAIM THREE BASED ON *RES IPSA LOQUITUR* AGAINST ALL DEFENDANTS EXCEPT BOEING

33. Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

34. The defendants jointly and severally had exclusive management and control of the aircraft and airport security systems that the hijackers penetrated, and whose actions resulted in the destruction of Two World Trade Center and Four World Trade Center on September 11th. The penetrations of such security systems in the ordinary course of events could not have occurred if these defendants had exercised ordinary care in the

maintenance and operation of said security systems. Because of their exclusive control and management of the security systems, they are possessed of superior, if not exclusive, access to information concerning the precise cause of the hijackers being able to take weapons through the airport and airline screening systems, to being able to enter the cockpit of Flight 175, to being able to operate and control the aircraft, and to being able to fly the aircraft without detection by anyone including the government. The plaintiffs, therefore, are entitled to infer their negligence from the general circumstances alleged herein. The penetration of the security systems and the takeover of the operation of the aircraft were not due to any action or contribution on the part of the plaintiffs.

35.     The destruction of Two World Trade Center and Four World Trade Center were a direct and proximate result of the conduct of these defendants.

36.     As a consequence, the plaintiffs have damages, including those for property damage and business interruption.

### CLAIM FOUR BASED ON STRICT LIABILITY AGAINST BOEING, UNITED AND UAL

37.     Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

38.     The aircraft used by Flight 175 on September 11th was manufactured by Boeing in accordance with a design prepared by United, under the control of UAL, in conjunction with Boeing. It was foreseeable that on some occasion individuals would attempt to gain access to the cockpit of the aircraft so as to control, either directly or indirectly, the operation of the aircraft or otherwise put the operation of the aircraft at risk.

39. United, under the control of UAL, and Boeing defectively designed the cockpit or flight deck environment, including the cockpit door and accompanying locks, and Boeing manufactured the designs according to the specifications. The design in use on September 11, 2001 on Flight 175 was unreasonably dangerous in that it could easily be penetrated by a person not authorized to enter the cockpit or operate the aircraft. The cockpit door was not secure and the accompanying locks were insufficient to deter or prevent unauthorized or unlawful entry to thwart a hijacking attempt. Alternative and safer designs were available for a nominal increase in cost that would have prevented or deterred unauthorized individuals, including the September 11 hijackers, from entering the Flight 175 cockpit.

40. United, under the control of UAL, defectively designed and Boeing defectively designed and manufactured the aircraft controls by failing to install a system that would lock out unauthorized persons from the aircraft controls, and by failing to install a system that would automatically signal the government and/or United when unauthorized persons had attempted to gain control or gained control of the aircraft's flight controls. Alternative and safer designs were available for a nominal increase in cost that would have prevented or deterred unauthorized individuals, including the September 11th hijackers, from gaining or keeping control of the aircraft.

41. This defective design permitted unauthorized individuals, including the September 11th hijackers, to gain access to the Flight 175 cockpit and to operate the aircraft and intentionally crash it into Two World Trade Center. The defective design and/or manufacture were proximate causes of the property damage and business losses

suffered by the plaintiffs as a consequence of the destruction of Two World Trade Center and Four World Trade Center on September 11th.

42. As a consequence, the plaintiffs have damages, including those for property damage and business interruption. Therefore, these defendants are jointly and severally liable for all damages sustained by the plaintiffs. The plaintiffs are entitled to recover their damages from them to the full extent allowed under applicable federal and state law.

### CLAIM FIVE FOR NEGLIGENT DESIGN AND/OR MANUFACTURE AGAINST BOEING, UNITED AND UAL

43. Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

44. On and before September 11th, Boeing was engaged in the business of designing and manufacturing aircraft to be used to transport passengers and crew by common carriers throughout the world. The aircraft, including the cockpit environment, cockpit doors and cockpit locking mechanisms used for United Flight 175 on September 11th were designed by United, operating under the control of UAL, in conjunction with Boeing, and were manufactured by Boeing in accordance with the design specifications. Additionally, United, under the control of UAL, in conjunction with Boeing designed the systems used to operate the aircraft. Boeing manufactured these systems according to the design specifications.

45. United and UAL owed the public, including plaintiffs, a duty to design the aircraft used in Flight 175, and Boeing owed the public, including the plaintiffs, a duty to design and manufacture the aircraft used in Flight 175, so that unauthorized individuals, including hijackers, could not gain access to the cockpit and/or could not take control of and fly the aircraft. Moreover, United, UAL, and Boeing owed the public, including the

plaintiffs, a duty to design and manufacture the aircraft so that if unauthorized individuals succeeded in unlawfully operating and flying the aircraft, United and the government would automatically be notified that unauthorized persons were in operational control of the aircraft.

46.     United, UAL and Boeing negligently and recklessly breached their respective duties by defectively designing and manufacturing the cockpit and flight deck environment, including the door and accompanying locks, in a way that allowed unauthorized individuals, including hijackers, to gain entry and operate the aircraft. Alternative and safer designs were available for a nominal increase in cost that would have prevented or deterred unauthorized individuals, including the September 11th hijackers, from gaining access to the Flight 175 cockpit and taking charge of the aircraft's controls. United, UAL and Boeing also negligently and recklessly breached their respective duties by defectively designing and manufacturing the aircraft without putting in place a system that would automatically notify United and the government when unauthorized persons were flying the aircraft. Alternative designs were available for a nominal increase in cost that would have automatically notified United and the government that unauthorized persons were illegally flying the aircraft.

47.     United, UAL, and Boeing's negligent and reckless design and/or manufacture of the Boeing aircraft used for Flight 175 were proximate causes of the destruction of the plaintiffs' property interests at the World Trade Center on September 11th.

48.     As a consequence, the plaintiffs have damages, including those for property damage and business interruption. Therefore, these defendants are jointly and severally

liable for all damages sustained by the plaintiffs. The plaintiffs are entitled to recover their damages from them to the full extent allowed under applicable federal and state law.

## CLAIM FOR CONTRIBUTION AGAINST ALL DEFENDANTS

49. Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

50. To the extent that the Port Authority pays a judgment to, or enters into a settlement with, any or all of the plaintiffs in individual actions arising out of the events of September 11, 2001 which are docketed in Master Docket 21MC101 of the United States District for the Southern District of New York, the Port Authority will be damaged and the defendants will therefore be liable to the Port Authority for all or part of the monies paid by the Port Authority, or for such proportionate part thereof that is attributable to the negligence or wrongful conduct of each defendant respectively, together with the costs and disbursements incurred by the Port Authority in the defense against the individual actions.

## CLAIM FOR INDEMNIFICATION AGAINST ALL DEFENDANTS

51. Each and every allegation contained in each of the foregoing paragraphs is realleged as if fully set forth herein.

52. In the event that the allegations of the plaintiffs' claims in the individual actions docketed in Master Docket 21MC101 are established, and if any of the plaintiffs' damages were caused by negligence and/or wrongful conduct other than that of the plaintiffs, then such negligence and/or wrongful conduct was that of the defendants, their agents, servants or employees, as the parties primarily and actively responsible, and any

plaintiffs, then such negligence and/or wrongful conduct was that of the defendants, their agents, servants or employees, as the parties primarily and actively responsible, and any negligence and/or wrongful conduct on the part of the Port Authority was merely secondary and passive.

53.     In the event that any of the plaintiffs recover a judgment against the Port Authority as alleged in their individual actions or enter into a settlement with the Port Authority, any such liability on the part of the Port Authority, by operation of law or otherwise, will have been caused and brought about by the negligence and/or wrongful conduct of the defendants, their agents, servants and employees, and not by any negligence and/or wrongful conduct of the Port Authority, its agents, servants or employees.

54.     By reason of the foregoing, the defendants are primarily liable for any injuries or damages that were sustained by the plaintiffs, and therefore the defendants are required to indemnify and hold harmless the Port Authority for any damages it may sustain by reason of being found liable to the plaintiffs or entering into a settlement with the plaintiffs.

**WHEREFORE** the Port Authority demands judgment against each of the defendants for contribution and/or indemnification, in whole or in part, for any and all monies that may be paid by the Port Authority in settlement of a claim or in satisfaction of a judgment arising from the plaintiffs' individual actions, and the Port Authority demands judgment against each defendant respectively for the entire amount of any

damages sustained by it including those for property damage and business interruption together with the costs and disbursements of this action, and such further relief as this Court believes to be just and proper.

Dated: New York, New York
April 16, 2008

*/s/ Keith E. Harris*

Keith E. Harris Esq. (KH 3162)
The Office of Milton H. Pacther Esq.
225 Park Avenue South
New York, NY 10013
(212) 435-3437
Attorney for Plaintiffs:
The Port Authority of New York and New Jersey;
WTC Retail LLC; and
The Port Authority Trans-Hudson Corporation

| | |
|---|---|
| **SIR**<br>   Please take notice that the within is a true copy of _____ duly made and entered herein in the office of the Clerk of the within entitled Court.<br><br>Dated, New York, _____ 2008<br><br>   Yours, etc.<br><br>**MILTON H. PACHTER**<br><br>Attorney for<br>**The Port Authority of New York and New Jersey**<br><br>225 Park Avenue South, 13th Floor<br>New York, NY 10003<br><br>To _____ Esq.<br><br>Attorney for | Index No. 21MC101(AKH)<br><br>UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br><br>In re SEPTEMEBT 11, 2001 LITIGATION<br><br>THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, WTC RETAIL LLC AND THE PORT AUTHORITY TRANS-HUDSON CORPORATION<br>                      Plaintiffs,<br>v.<br>UAL CORPORATION, UNITED AIRLINES, et al.<br>                      Defendant |
| **SIR**<br>   Please take notice that _____ of which the within is a true copy will be presented for settlement and signature to _____ one of the _____ of the within named Court at _____ in the County of _____ on the _____ day of _____ 2008 at _____ o'clock in the forenoon or as soon thereafter as counsel can be heard.<br><br>Dated, New York, _____ 2008<br><br>   Yours, etc.<br><br>**MILTON H. PACHTER**<br><br>Attorney for<br>**The Port Authority of New York and New Jersey**<br><br>225 Park Avenue South, 13th Floor<br>New York, NY 10003<br><br>To _____ Esq.<br><br>Attorney for | **COMPLAINT**<br><br>**MILTON H. PACHTER**<br>**Attorney for Plaintiff**<br>**The Port Authority of New York and New Jersey**<br><br>**Office and Post Office Address**<br>**225 PARK AVENUE SOUTH, 13TH FLOOR**<br>**New York, NY 10003**<br>**Tel.: (212) 435-3437**<br><br>Due and proper service of a copy of the within _____ is hereby admitted<br><br>Dated, New York, _____ 2008<br><br>Attorney for |